**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAUN WARRICK,** | : | |
| | : | |
| Petitioner, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH TERRA, *et al.*,** | : | **No. 24-90** |
| | : | |
| Respondents. | : | |

**J. Perez** **November 17, 2026**

## MEMORANDUM

Petitioner Shaun Warrick seeks habeas relief under 28 U.S.C. § 2254 from his 2015 Philadelphia County convictions for two counts of first-degree murder and related offenses. Magistrate Judge Caroline Goldner Cinquanto issued a 44-page Report and Recommendation ("R&R") addressing each of Warrick's nine grounds for relief and recommending that the Petition be denied. ECF No. 31. The R&R also recommends granting a certificate of appealability on Warrick's first ground for relief ("Ground One"), which alleges that trial counsel was ineffective for failing to object to the prosecutor's allegedly discriminatory use of peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79 (1986).ECF No. 31. Warrick filed objections, ECF No. 36, and the Commonwealth responded, ECF No. 45.

The Court thereafter directed supplemental briefing on Ground One, including whether intervening authority affected the appropriate prejudice analysis under *Strickland v. Washington*, 466 U.S. 668 (1984), and whether federal habeas law permitted further factual development of the claim. ECF No. 46. Warrick filed a supplemental memorandum, ECF No. 47, and the Commonwealth responded, ECF No. 50.

After de novo review of the portions of the R&R to which Warrick objects, the Court will overrule the objections and adopt the recommendation that the Petition be denied, except that it declines to adopt the R&R's procedural default and timeliness analysis of Warrick's cumulative prejudice argument, which the Commonwealth has expressly disclaimed and which fails on the merits in any event. Ground One likewise does not warrant habeas relief: although the proper application of *Strickland* prejudice to an ineffective assistance claim based on counsel's failure to raise a *Batson* objection remains unsettled, the Court concludes that Warrick must establish prejudice and has not shown a reasonable probability of a different trial outcome. No evidentiary hearing is therefore necessary. The Court will, however, grant a certificate of appealability on Ground One because reasonable jurists could nevertheless debate the governing prejudice inquiry.

## I. Background

Warrick stands convicted of murdering Tiffany Barnhill and Marcedes Ivery on February 14, 2011, inside a residence on Rutland Street in Philadelphia. The Commonwealth presented evidence that Warrick forced his way into the home and shot both women. On August 19, 2015, a jury found him guilty of two counts of first-degree murder, as well as burglary, carrying a firearm without a license, and carrying a firearm in public. The trial court sentenced him to two consecutive terms of life imprisonment for the murders, followed by a consecutive aggregate term of sixteen to thirty-two years on the remaining offenses. ECF No. 31 at 1–2.

The Commonwealth offered evidence that, in the days before the murders, Barnhill was attempting to end her romantic relationship with Warrick, and Ivery had told Warrick to stop contacting her. N.T. 8/13/15 at 223–29, 285–90. Against that backdrop, the Commonwealth relied heavily on the testimony of Alicia Watkins, Warrick's longtime friend, who placed him at the Ivery residence immediately before the shootings. Watkins testified that Warrick drove her and Octavia Dugger to the residence while arguing with a woman by telephone and telling her to "put Tiffany

on the phone." *Id.* at 97–99. Watkins saw Warrick kick in the front door and enter the house; several minutes later, she heard gunshots from inside. *Id.* at 100–04. The following day, after Watkins told Warrick that a news report described a man and two women fleeing the scene, Warrick responded, "I fucked up," and later expressed concern that Watkins would "tell on him." *Id.* at 103–05. Dugger corroborated the central events leading up to the shooting, testifying that Warrick drove the two women to the Ivery residence, kicked the front door, and returned to the car a few minutes later. *Id.* at 173–79, 212–16.

Crystal Smith, who was across the street at the time of the murders, provided independent corroboration. Smith testified that she saw a man force open the front door shortly before the shooting and later identified that man as Warrick from a photo array. N.T. 8/14/15 at 26–30, 37–40. After hearing gunshots, Smith saw Warrick leave the residence and move his hand toward his waistband, although she acknowledged that she did not actually see a firearm. *Id.* at 30–33. Smith and Kiana Walker had been outside for approximately thirty minutes before the shooting and saw no one else enter or leave the residence during that period. *Id.* at 34–36, 174–79.

Police recovered fourteen .40-caliber cartridge casings from the residence, and a firearms examiner determined that all fourteen had been fired from the same firearm. *Id.* at 79, 231, 234–36, 242. The firearm itself was never recovered. *Id.* at 242. The Commonwealth also introduced records for a cellular telephone number that it linked to Warrick through witness testimony. Those records reflected calls to Ivery's cellular telephone and to the residence shortly before the murders, and cell-site data showed the phone moving into the area of the shootings around the relevant time. *Id.* at 127, 141–51; N.T. 8/13/15 at 279–82, 306–10.

Warrick unsuccessfully pursued a direct appeal and later sought relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). His PCRA proceedings included claims of ineffective

assistance of trial counsel and alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963). The PCRA court denied relief, the Pennsylvania Superior Court affirmed, and the Pennsylvania Supreme Court denied allowance of appeal. ECF No. 31 at 2–5. Warrick then filed this federal habeas petition.

## II. Standard of Review

When a party files timely and specific objections to a magistrate judge's report and recommendation, the district court must make a de novo determination of the portions to which objection is made. 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the recommended disposition. *Id*. Portions of the R&R to which no specific objection is made are reviewed for clear error.

Federal habeas review is separately constrained by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). When a state court has adjudicated a federal claim on the merits, relief may not be granted unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" as determined by the Supreme Court, or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

Claims of ineffective assistance are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must establish both that counsel's performance was constitutionally deficient and that the deficiency prejudiced the defense. *Id.* at 687. Ordinarily, prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Under *Brady v. Maryland*, the prosecution violates due process when it suppresses evidence favorable to the accused that is material to guilt or punishment. 373 U.S. at 87. Suppressed evidence is material when there is a reasonable probability that disclosure would have produced a

different result. In assessing materiality, suppressed evidence must be considered collectively rather than item by item. *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

## III. Ground One Fails Because Warrick Cannot Establish *Strickland* Prejudice.

In Ground One, Petitioner alleges that trial counsel was ineffective for failing to object to the prosecutor's use of peremptory challenges against Black prospective jurors. The claim arose during PCRA review, after counsel obtained the prosecutor's handwritten jury-selection notes. Although the voir-dire transcript does not identify the prospective jurors' races, the parties agreed that a chart prepared by the Commonwealth accurately reflects the race and gender associated with the prosecutor's first twenty jury-selection decisions. ECF No. 31 at 10–11 & n.11.

By the prosecutor's twentieth jury-selection decision, he had exercised four peremptory challenges, each against a Black prospective juror. During that same period, he had the opportunity to strike eight white prospective jurors and exercised no peremptory challenge against any of them. *Id.* at 10–11. Over the course of jury selection, the prosecutor used five of his six peremptory challenges against Black prospective jurors and accepted seven of the twelve Black prospective jurors he had an opportunity to strike. The seated jury ultimately consisted of five Black jurors, five white jurors, and two Hispanic jurors. ECF No. 22 at 17–18; ECF No. 31 at 11–12.

Warrick contends that counsel should have objected during jury selection and thereby triggered the three-step inquiry required by *Batson v. Kentucky*, 476 U.S. 79 (1986). The R&R concluded that the state court applied an unreasonable standard in adjudicating that claim, but nevertheless recommended denying relief because Warrick could not establish prejudice under *Strickland*. ECF No. 31 at 10–16. The Court agrees.

### A. The State Court Applied an Unreasonable *Batson* Standard.

Under *Batson*, a defendant must first identify circumstances permitting an inference that the prosecutor exercised a peremptory strike because of race. 476 U.S. at 96–97. If the defendant

makes that showing, the burden shifts to the prosecutor to offer a race-neutral reason for the strike. *Id.* at 97–98. The court then determines whether the defendant has proved purposeful discrimination. *Id.* at 98.

Since trial counsel did not object during voir dire, Warrick raised the issue during the PCRA proceedings as a claim of ineffective assistance. The PCRA court relied on *Commonwealth v. Uderra*, 862 A.2d 74 (Pa. 2004), which required Warrick to establish "actual, purposeful discrimination by a preponderance of the evidence," in addition to satisfying *Strickland*. The Superior Court affirmed. ECF No. 31 at 11–12.

That standard placed too heavy a burden on Warrick at the threshold. *Batson* does not require a defendant to prove discrimination more likely than not before requiring the prosecutor to explain a challenged strike. The first step asks only whether the circumstances support an inference of discriminatory purpose. *Johnson v. California*, 545 U.S. 162, 170 (2005). The Third Circuit likewise has rejected efforts to impose a heightened showing of purposeful discrimination merely because a *Batson* claim is raised after trial. *Lark v. Sec'y Pa. Dep't Corr.*, 645 F.3d 596, 619–20 (3d Cir. 2011). The Court, therefore, agrees with the R&R that the state court's application of *Uderra* was an unreasonable application of *Batson* and considers Warrick's ineffective assistance claim de novo.

### B. Warrick Cannot Establish *Strickland* Prejudice.

The more difficult question is what prejudice Warrick must prove. A preserved *Batson* violation is structural error and is not subject to ordinary harmless error review. *See Weaver v. Massachusetts*, 582 U.S. 286, 301 (2017). Here, of course, Warrick does not present a preserved *Batson* claim. His claim is that counsel rendered ineffective assistance by failing to raise one. That distinction matters under *Strickland*. The Supreme Court has explained that the structural nature

of an underlying constitutional violation does not necessarily eliminate the requirement to prove prejudice when the violation is raised through ineffective assistance on collateral review. *Weaver*, 582 U.S. at 299–303. The Third Circuit similarly has recognized that "[a] showing of structural error . . . does not always trigger a presumption of prejudice." *Baxter v. Superintendent Coal Twp. SCI*, 998 F.3d 542, 547 (3d Cir. 2021).

In *Hutchinson v. Superintendent Greene SCI*, 860 F. App'x 246 (3d Cir. 2021), the Third Circuit applied that principle to an ineffective assistance claim based on counsel's failure to raise a *Batson* objection. Although nonprecedential, *Hutchinson* rejected presumed prejudice and instead asked whether counsel's omission created a reasonable probability of a different trial outcome. *Id.* at 249–50.

The Court recognizes that *Government of the Virgin Islands v. Forte*, 865 F.2d 59 (3d Cir. 1989), approached prejudice differently in a distinctive procedural setting. There, counsel had been specifically instructed to preserve a *Batson*-type objection before *Batson* was decided, and the Third Circuit found prejudice because counsel's failure caused the defendant to lose an appellate remand that otherwise would have followed once *Batson* became controlling. *Id.* at 63–64. The court expressly described its holding as narrow. *Id.* at 63. *Forte*, therefore, does not establish that every failure to raise a *Batson* objection satisfies *Strickland* prejudice without regard to the effect on the criminal proceeding.

More recently, Justice Sotomayor questioned the trial-outcome approach in a statement respecting the denial of certiorari in *Clark v. Mississippi*, 146 S. Ct. 1529 (2026). She reasoned that the relevant "proceeding" may instead be the lost *Batson* proceeding and that requiring a defendant to show that a differently constituted jury would have voted differently risks the very race-based assumptions *Batson* forbids. *Id.* at 1530–31. That reasoning underscores the difficulty

of the issue, but *Clark* is a statement by one Justice accompanying a denial of certiorari, not a decision of the Supreme Court. Both parties agree that no intervening binding authority resolves the question. ECF No. 47 at 1; ECF No. 50 at 1–2.

The Court thus follows the approach taken in *Hutchinson*, consistent with *Weaver* and *Baxter*, and requires Warrick to show a reasonable probability that counsel's failure to raise a *Batson* objection affected the outcome of his trial. He has not made that showing.

As detailed above, the Commonwealth presented substantial evidence identifying Warrick as the perpetrator. Watkins accompanied him to the Ivery residence, saw him force his way inside, heard gunshots moments later, and testified to his incriminating statements afterward. N.T. 8/13/15 at 97–105. Dugger corroborated the trip to the residence and Warrick's forced entry. *Id.* at 173–79, 212–16. Smith independently identified Warrick as the man who forced open the door immediately before the shooting. N.T. 8/14/15 at 26–30, 37–40. The Commonwealth also presented cellular evidence consistent with the phone it linked to Warrick moving into the area of the murders, repeated calls preceding the shootings, and evidence of motive arising from Warrick's deteriorating romantic relationship with Barnhill. *Id.* at 127, 141–51; N.T. 8/13/15 at 223–29, 279–90.

The prosecution's case was not without weaknesses. The firearm was never recovered, N.T. 8/14/15 at 242, and none of the latent fingerprints submitted for comparison matched Warrick, N.T. 8/17/15 at 37–38. However, *Strickland* asks whether there is a reasonable probability of a different result, not whether the prosecution's proof was flawless. Considering the record as a whole, the Court concludes that counsel's failure to raise a *Batson* objection does not undermine confidence in the verdict.

Given that Warrick cannot establish prejudice, the Court need not decide whether counsel's performance was deficient or whether the voir-dire evidence ultimately would establish purposeful discrimination at *Batson*'s third step.

### C. No Evidentiary Hearing Is Required.

Nor is an evidentiary hearing necessary. Warrick repeatedly sought factual development of his *Batson*-based ineffective assistance claim during the PCRA proceedings, and the Commonwealth now agrees that he "diligently but unsuccessfully" sought a state-court hearing. ECF No. 47 at 6–8; ECF No. 50 at 3, 5. Section 2254(e)(2) does not itself bar further factual development.

However, that does not make a hearing automatic. A federal habeas court need not conduct a hearing when the petitioner's allegations, even if proved, would not entitle him to relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Fooks v. Superintendent Smithfield SCI*, 96 F.4th 595, 597–98 (3d Cir. 2024). Under the prejudice standard set forth above, testimony concerning counsel's reasons for not objecting or the prosecutor's reasons for particular strikes would not alter the Court's conclusion that Warrick has not shown a reasonable probability of a different trial outcome. Habeas relief on Ground One will, therefore, be denied without an evidentiary hearing.

## IV. The Jury Instruction Claims Do Not Establish Ineffective Assistance.

Warrick next challenges the R&R's disposition of three ineffective assistance claims concerning the jury instructions. None warrants relief.

First, Warrick argues that counsel should have objected to the first-degree murder instruction because the trial court improperly equated malice with specific intent to kill. The R&R concluded that, even if portions of the charge were ambiguous, there was no reasonable likelihood that the jury understood the instruction to relieve the Commonwealth of its burden of proving first-

degree murder. ECF No. 31 at 17–19. The Court agrees. Warrick defended the case on the ground that he was not the shooter. The evidence did not support self-defense or voluntary manslaughter, and counsel did not pursue either theory. In the context of the charge as a whole and the case actually tried, Warrick has not shown either deficient performance or prejudice.

Second, Warrick argues that counsel should have requested a limiting instruction concerning evidence that he attempted to discourage Watkins from speaking with police. The state courts reasoned that Pennsylvania Rule of Evidence 404(b) did not apply because Warrick's conduct was not itself a separate crime. As the R&R recognized, that reasoning was incorrect because Rule 404(b) reaches other "acts," not merely other crimes. ECF No. 31 at 20–22. The error in the state court's reasoning, however, does not establish prejudice. The evidence was properly before the jury as evidence of consciousness of guilt, and the omission of a further no-propensity instruction does not create a reasonable probability of a different verdict, given the evidence as a whole.

Third, Warrick contends that counsel should have requested an express instruction that consciousness-of-guilt evidence could not, standing alone, support a conviction. The trial court told the jury that it could—but was not required to—consider Warrick's efforts to discourage a witness from speaking with police as evidence of consciousness of guilt and directed the jury to weigh that evidence together with all other evidence in the case. ECF No. 31 at 23–24. Although a fuller instruction could have stated the limitation more expressly, its omission did not prejudice Warrick.

The objections concerning the jury instructions are overruled.

## V. The Traffic Court Evidence Does Not Establish Prejudice.

Warrick also contends that trial counsel was ineffective for failing to investigate records concerning his appearance in Traffic Court on the afternoon of the murders. The records showed

that his hearing was scheduled for 1:00 p.m. and that court personnel entered the disposition of his citations at 3:17 p.m. The shootings occurred at approximately 3:43 p.m. Warrick argues that the records would have cast substantial doubt on the Commonwealth's chronology.

The records had impeachment value, but they did not establish when Warrick left Traffic Court. A scheduled hearing time does not establish when the matter was called, and the time at which a court employee entered a disposition does not establish that Warrick remained present until that entry was made. Watkins, moreover, testified that she accompanied Warrick to Traffic Court and that they were there for "maybe an hour" before leaving. N.T. 8/13/15 at 114–21.

Even assuming competent counsel should have investigated and used the records, Warrick has not shown prejudice. The records could have provided another basis to question Watkins's timeline, but they did not establish an alibi or otherwise exclude Warrick as the shooter. Moreover, they would not have displaced Dugger's corroboration, Smith's independent identification, Warrick's post-offense statements, or the cellular and motive evidence. There is no reasonable probability that introduction of the Traffic Court records would have changed the verdict. See ECF No. 31 at 27–29.

This objection is therefore overruled.

## VI. The Suppressed Evidence Was Not Material Under *Brady*.

Warrick next challenges the R&R's rejection of his *Brady* claims. He relies on undisclosed pretrial communications from Walker and Dugger and information concerning misconduct by detectives involved in the investigation. None of that evidence, individually or collectively, was material.

The prosecution's file contained a December 2013 note reflecting that Walker said she "didn't see anything" and wanted to quash her subpoena. While this statement had impeachment value, the jury heard substantially the same limitation on Walker's knowledge at trial. Walker

acknowledged that portions of her police statement were based on what Smith had told her rather than on her own observations, that she could not identify the man at the door, and that she had seen little of the relevant events herself. N.T. 8/14/15 at 177–78, 193–94, 207–13. The undisclosed note would have reinforced impeachment already before the jury, but it would not have materially altered its assessment of Walker.

Dugger likewise told the prosecutor before trial that she did not remember the incident. She later testified in detail about the trip to the Ivery residence and Warrick's conduct there. The prior statement could have been used to challenge her recollection, but its impeachment value was limited in light of the evidence the defense already had to test her credibility and, more importantly, the independent testimony of Watkins and Smith. ECF No. 31 at 31–33.

Warrick also relies on evidence that detectives involved in portions of the investigation had engaged in misconduct in other cases. But he has not connected that unrelated misconduct to fabrication, coercion, or other impropriety in this investigation. The witnesses whose statements those detectives obtained did not testify that police coerced them into implicating Warrick, and the misconduct evidence did not undermine the independent trial evidence identifying him as the perpetrator. ECF No. 31 at 34–38.

*Brady* materiality must be assessed collectively, not item by item. *Kyles*, 514 U.S. at 436. Considered together, the Walker and Dugger statements would have supplied additional impeachment, and the detective evidence would have permitted further scrutiny of portions of the investigation. But none materially altered the central proof against Warrick. In light of Watkins's account, Smith's independent identification, Dugger's corroboration, and the supporting cellular and motive evidence, the suppressed evidence does not place the case in a sufficiently different light to undermine confidence in the verdict. See *id.* at 435.

Warrick's *Brady* objections are overruled.

**VII. The Remaining Ineffective Assistance Claims Present No Basis for Relief.**

Warrick does not specifically object to the R&R's rejection of his claim that counsel failed to object to alleged bolstering by the trial court and prosecutor or his claim concerning counsel's failure to object to Kelly Hunt's testimony. The Court has reviewed those portions of the R&R for clear error and finds none. See ECF No. 31 at 24–27, 40–41. Those claims will be denied for the reasons stated in the R&R.

**VIII. The Alleged Errors Do Not Warrant Relief When Considered Collectively.**

Finally, Warrick argues that the Court must consider the combined effect of counsel's alleged deficiencies and the evidence allegedly suppressed in violation of *Brady*, even if no individual claim independently warrants relief. ECF No. 36 at 2–6. The R&R treated that argument as a separate cumulative-error claim and concluded that it was procedurally defaulted and untimely. ECF No. 31 at 38–39 n.21. The Commonwealth, however, expressly states that it does not understand Warrick to assert a new standalone claim and does not rely on procedural default on that basis. ECF No. 45 at 2. The Court, therefore, declines to adopt that portion of the R&R and considers Warrick's aggregation argument on the merits.

Errors that do not independently warrant habeas relief may, in an appropriate case, have a cumulative prejudicial effect. *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007). Here, they do not. As explained above, the non-*Batson* errors Warrick identifies would have provided the defense with additional impeachment, another basis to challenge Watkins's chronology, and more complete instructions concerning the permissible use of certain evidence. However, those matters were limited in force. The Traffic Court records did not establish an alibi; the undisclosed Walker and Dugger statements were largely cumulative of credibility issues already before the jury; and the

omitted instructions did not concern the elements of the offenses or remove otherwise admissible evidence from the jury's consideration.

Nor do those matters, when combined, materially alter the evidence identifying Warrick as the shooter. Watkins placed Warrick at the residence, saw him force his way inside immediately before the gunshots, and testified to his incriminating statements afterward. Dugger corroborated the trip and Warrick's forced entry, and Smith independently identified Warrick as the man who forced open the door. The Commonwealth also presented cellular and motive evidence corroborating significant portions of that account. Although the firearm was never recovered and no fingerprint evidence identified Warrick, those weaknesses were before the jury and do not give the additional alleged errors greater cumulative force.

Considering the alleged deficiencies and suppressed evidence together, the Court finds no reasonable probability of a different result and no basis to undermine confidence in the verdict. Warrick's objection is therefore sustained only to the extent the R&R treated his aggregation argument as procedurally defaulted or untimely. On the merits, the objection is overruled.

## IX. A Certificate of Appealability Will Issue Only as to Ground One.

A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied when reasonable jurists could debate the Court's resolution of a constitutional claim or conclude that the issue warrants further review. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Warrick has not made that showing as to his remaining claims. For the reasons explained above and in the R&R, reasonable jurists would not debate the Court's disposition of those claims.

Ground One presents a different question. Neither the Supreme Court nor a precedential Third Circuit decision has squarely resolved how *Strickland* prejudice should be measured when

counsel fails to raise a *Batson* objection. In *Hutchinson*, the Third Circuit required a petitioner asserting such a claim to show a reasonable probability that the trial verdict would have been different absent counsel's omission. 860 F. App'x at 249–50. *Forte* took a different approach in a distinct procedural setting, finding prejudice based on the loss of the remedy that preservation of the jury-selection claim would have afforded. 865 F.2d at 63–64. Justice Sotomayor's statement in *Clark* likewise questioned whether prejudice in this context should be measured by the ultimate trial verdict rather than by the loss of the *Batson* proceeding itself. 146 S. Ct. at 1529–31. The parties agree that no intervening binding authority has resolved that issue. ECF No. 47 at 1–3; ECF No. 50 at 1–2.

Reasonable jurists could, therefore, debate the prejudice standard applied to Ground One. A certificate of appealability will issue only as to Warrick's claim that trial counsel rendered ineffective assistance by failing to raise a *Batson* objection.

**X. Conclusion**

For the foregoing reasons, Warrick's objections will be overruled except to the limited extent that the Court declines to adopt the R&R's conclusion that his aggregation argument is procedurally defaulted and untimely. That argument nevertheless fails on the merits.

The Court will otherwise adopt the R&R and deny the Petition for Writ of Habeas Corpus. No evidentiary hearing will be held. A certificate of appealability will issue only as to Ground One, Warrick's ineffective-assistance claim based on counsel's failure to raise a *Batson* objection.